## COMSTOCK *v.* POTTER.

1. BILLS AND NOTES—EQUITY—CONTRIBUTION.

In a suit for contribution the parties were stockholders in an automobile company and they having become liable to pay some of its notes, got security in the form of a trust agreement, transferring part of the corporate property to complainant as trustee. It was agreed by the written trust arrangement that if the property did not realize enough to pay the debts and expenses, each of the signers should bear his equal proportion of the amount unpaid. The trustee was to receive no compensation, but had an equal interest with the others. By several successive arrangements, money was borrowed on the indorsed notes of the defendants and complainant and each of the debtors indorsing the obligations had an eighth interest in the balance or equity. The trustee, with the consent of defendants, borrowed a considerable sum to protect the joint interests and was finally compelled to pay the notes indorsed by the others jointly interested. *Held*, that he was not a holder of the notes so as to entitle him to bring a legal action and, in view of the apparent inadequacy of his legal remedy, he could have relief in equity to compel contribution from the others interested.

2. SAME—PARTIES—INDORSEMENT—EVIDENCE.

When there are successive indorsers on a promissory note, which the first one liable has to pay, it is competent for him to prove that all of the indorsers became parties to the agreement under an arrangement to be sureties for one another, and that therefore a right of contribution from the joint indorsers arose.

3. SAME—INDORSEMENT—PARTIES LIABLE.

The original indorser of a note ordinarily has no claim for contribution against subsequent indorsers.

4. SAME—JOINT UNDERTAKINGS—SURETY.

The right is not limited to cosureties; it extends to joint contractors one of whom that has paid more than his share of the joint obligation may compel his co-contractors to contribute.

5. SAME—ADEQUATE REMEDY AT LAW.

> Courts of equity have not been ousted of their jurisdiction on account of the assumption of jurisdiction by the law, but they retain concurrent jurisdiction if the legal form of action does not furnish adequate relief.

6. SAME.

> Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his cosureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given between all those who are jointly, or jointly or severally, liable on contract or obligation in the nature of contract.

7. SAME.

> When two or more persons are jointly liable for the payment of the same debt or obligation and one has paid the entire claim, he may have contribution from his codebtors or obligees in cases where it would be equitable and just.

Appeal from Alpena; Widdis, J., presiding. Submitted April 12, 1916. (Docket No. 135.) Decided June 1, 1916.

Bill by William A. Comstock against Fred N. Potter and others for contribution. From a decree overruling a demurrer to complainant's bill, defendants appeal. Affirmed.

*Henry, Henry & Henry,* for complainant.

*I. S. Canfield,* for defendants Corbin, Hill, Collins and Fred N. Potter.

*Frank T. Hinks,* for defendants James J. Potter and John D. Potter.

STONE, C. J. This is a bill for contribution. It states that complainant and all of the defendants were

on May 11, 1912, stockholders in the Alpena Motorcar Company, a corporation, whose business was located at Alpena, Mich.; that on and prior to said date all of the parties thereto, because of their interest as stockholders of said company, had become indorsers of the notes of that corporation; that on said date said company owned an equity in certain real estate located in Washington, D. C., known as the "Netherlands property," the legal title being held in the name of the defendant Roberson, as trustee; that by agreement of all the parties to this suit and said company on said day the equity in said property was transferred to all the parties to the suit, and the legal title was taken and thereafter held by complainant as trustee for the parties; that on the same date the parties to this suit, with one Patrick Culligan, executed a written agreement known as the "trust agreement," annexed to the bill as Exhibit A; that defendant John D. Potter did not sign said agreement, but afterwards considered himself a party thereto, and recognized his obligations thereunder.

The "trust agreement," after reciting that complainant, as trustee, held title to the "Netherlands property," contains the following stipulations and agreements: That complainant, as trustee, had on said date executed two promissory notes of $3,000 each to the Alpena County Savings Bank, due in six months, with 6 per cent. interest, and that defendants John D. Potter and James J. Potter had indorsed them; that complainant, as trustee, had also executed two other promissory notes to said bank for $8,500 each, payable six months after date, bearing the same rate of interest, and that defendants Roberson, Corbin, Hill, Collins, and Fred N. Potter, with complainant, had indorsed the same; that complainant had, as trustee, also made a promissory note to said Patrick Culligan for $3,000, payable in six months, bearing interest at 6 per cent.

per annum; that the moneys procured upon said notes had been used to purchase the equity, right, title, interest, and claim of said Alpena Motorcar Company in said "Netherlands property." Provision was made for the execution by complainant of notes to the said bank and said Culligan, for the purpose of raising money to reduce the mortgage incumbrance on said property, but the amount of such proposed notes is not stated, and it is not claimed that other notes were in fact ever made.

It was agreed that complainant should handle said real estate; that the rents and incomes thereof should be applied upon the payment of taxes, the expense of taking care of said property, and the mortgage thereof, and the balance be applied on the mortgage thereon; that said property might be sold by complainant, with the written consent of the parties thereto; that out of the proceeds of said sale the mortgages should be paid, the balance of the proceeds, if any, applied to the payment of the notes therein described, and any and all renewals and extensions thereof; the residue, if any, to be divided equally between the parties thereto; that, if said property did not bring a sufficient sum to pay all of said notes in full, each of the parties of the second part should bear equally his proportion of the unpaid amounts on said notes; that the contract should apply to all renewals and extensions of the notes; and that complainant should receive no compensation for his services as trustee.

The bill further states that on or about July 31, 1912, for the purpose of promoting the interest of all the parties, it was verbally agreed to raise $15,000 by discounting a note signed by complainant as trustee and indorsed by complainant and all of the defendants; that a note for six months, at 6 per cent., for $15,000, in favor of the Alpena County Savings Bank, was executed and indorsed as above stated, and the proceeds

paid to said Alpena Motorcar Company for that amount of treasury stock; and that "each of said parties was considered as holding a one-eighth interest in the capital stock upon the purchase of which said sum was credited."

This $15,000 note was renewed to July 31, 1914, when the amount was divided into eight notes of $1,875 each. Each party, complainant and defendants, executed one of these notes, and the others indorsed. When this $15,000 note was made all of the parties contemplated that the said note would be kept alive by renewals until the complainant was able to sell the real estate. On April 28, 1913, the parties executed another agreement in writing. The substance of this agreement is as follows:

That for good and valuable consideration, and in further consideration of the advantages to be derived, the complainant, trustee, under an agreement dated May 11, 1912, was authorized to borrow $12,000 from said complainant, and $12,000 from Patrick Culligan for one year at 6 per cent. interest, the proceeds to be applied by said complainant, as trustee under said agreement, to pay off the "third trust" against said "Netherlands property," with interest, charges, and taxes; that, in case complainant trustee should make sale of the "Netherlands property," the proceeds of sale, after paying off the "recorded trusts" against said property, should be applied to pay:

(1) The notes of $12,000 to said complainant and Culligan, with interest.

(2) The loan at Alpena County Savings Bank aggregating $26,000 in notes, signed by complainant as trustee, under agreement of May 11, 1912, as follows, with interest, shall be paid: $8,500, indorsed by complainant, Roberson, F. N. Potter, Corbin, Hill, and Collins; $8,500, with same indorsers as above; $3,000, indorsed by J. J. Potter and J. D. Potter; $3,000, indorsed by J. J. Potter and J. D. Potter; $3,000 to P. Culligan.

(3) That there should be paid a note of complainant trustee under agreement of May 11, 1912, at the Alpena County Savings Bank for $15,000, indorsed by Roberson, Comstock, Corbin, Hill, Collins, F. N. Potter, J. J. Potter, and J. D. Potter, and a note of $5,000 to P. Culligan, all with accrued interest.

The bill further states that complainant had held and managed the "Netherlands property" without compensation, applying the income to payment of interest, charges, taxes, and expenses, but had been unable to sell the property, and so he had not paid any part of the indebtedness scheduled in said last-named agreement; that the situation of the parties, their relations to each other, and the real estate were substantially the same as at the date of the last-named agreement; that the parties to this suit were able to carry the notes by renewals in the same form until February 1, 1915; that on the last-named date said eight notes for $1,875 each, made and indorsed as aforesaid, became due and payable at the Alpena County Savings Bank, where the said notes had been discounted, and were protested for nonpayment, and that complainant, on or about April 20, 1915, paid all of said notes, the amount so paid by him for principal, interest, and protest fees aggregating the sum of $15,658; that by reason of the premises "each of the parties hereto became and is equitably liable to your orator for his equal one-eighth share of the said sum of $15,658" paid by him as aforesaid, with interest thereon at the rate of 6 per cent. per annum from and after the 20th day of April, 1915; that "the equities of your orator and of the other parties hereto arising from the transactions aforesaid cannot be correctly adjusted in an action at law, and your orator has no effective means of adjusting the mutual rights and obligations of the parties hereto, except by the decree of a court of equity."

Complainant prays the following relief:

(1) That the defendants answer the bill.

(2) That the defendants each respectively be decreed to pay complainant an equal one-eighth of the amount paid by him, with interest and costs of suit, and that complainant have execution therefor.

(3) That all of the mutual rights, liabilities, and obligations of the parties hereto growing out of the facts aforesaid, be fixed, established, and adjusted by the decree of this court.

(4) A prayer for general relief.

The eight separate notes, as well as the $15,000 note, are all set forth in the bill of complaint. Of the eight notes signed by the several defendants an inspection shows that the complainant was the second indorser on all of the notes save one, where he was the first indorser.

The bill of complaint was taken as confessed by the defendant Roberson. The other defendants have demurred, the substance of the demurrers being:

(1) That the complainant has not, in and by his bill, stated a case for the interposition of a court of equity.

(2) Because all and every of the matters and things in the bill of complaint mentioned are matters which may be tried and fully determined in a suit at law, and with respect to which the complainant is not entitled to any relief in a court of equity.

(3) Because a court of equity has no jurisdiction to enforce the payment of promissory notes, or notes between indorsers and the maker thereof, as set forth in the bill of complaint.

Upon argument the demurrers were overruled, and the defendants, with exception of defendant Roberson, have appealed.

The argument of the appellants is to the effect that the complainant has a complete and adequate remedy at law. An investigation of the questions involved has satisfied us that the demurrers were properly over-

ruled, and that complainant has a proper standing in a court of equity. It is urged by appellants' counsel that under sections 10055 and 10057, 3 Comp. Laws (3 Comp. Laws 1915, §§ 12366, 12469, 12802), the complainant could bring an action at law as the lawful holder of these promissory notes, and recover against all of the defendants in one suit. Section 10055 provides that it shall be lawful for the holder of any bill of exchange or promissory note, instead of bringing separate suits against the drawers, makers, guarantors of the payment thereof, indorsers, and acceptors of such bill or note, to include all or any of the said parties to the bill or note in one action, and to proceed to judgment and execution in the same manner as though all the defendants were joint contractors. In our opinion, the complainant is not such a "holder" of the promissory notes in question as is contemplated by this provision of the statute. The bill alleges that complainant paid these notes. He cannot bring suit upon them as a holder. By this we do not mean that the notes may not be used by him as evidence of the amount which he has paid, but, if he were to sue at law, he would properly bring his action for money paid for the use and benefit of the defendants, using the notes as evidence of the amount of his damages. Neither do we think that the complainant could sue all of the defendants, makers, and indorsers in one suit in an action at law, because he is not within the terms of the statute above referred to.

In *Port Huron, etc., R. Co.* v. *Potter*, 55 Mich. 627 (22 N. W. 70), this court, in referring to the sections of the statute above mentioned, said:

"The only new rule brought in by that statute was the provision which allowed a single suit to be brought against indorsers and other parties as well as makers."

We are satisfied that in an action at law the defendants would have to be sued severally, and not jointly.

At least makers and indorsers could not be joined under the circumstances as they appear in this case. 6 R. C. L. p. 1061, and cases there cited.

It should be noted that in an action at law complainant would not be able to maintain a suit against subsequent indorsers, and this fact, as well as the avoidance of a multiplicity of suits, should give equity jurisdiction, where it is sought, as in this case, to hold all of the defendants jointly in pursuance of not only justice and equity, but of the contractual relations of the parties.

"When there are three successive indorsers on a note which the first indorser has paid, it is competent for him to show that all indorsed the note under an agreement to do so as joint sureties for one another, and that therefore he has a right of contribution from the second and third indorsers; ordinarily, of course, being the first indorser, he could have no claim against any subsequent indorser." Merwin's Equity & Equity Pleadings, § 601.

The right of one surety to call upon his cosurety for contribution, like the right of all the sureties to call upon the principal for indemnity, arises from a principle of equity, growing out of the relations which the parties have assumed towards each other. The equity springs up at the time of entering into that relation, and is fully consummated when the surety is compelled to pay the debt. 6 R. C. L. p. 1042.

It may be taken as settled that the right to contribution is not confined to the relation of cosurety, but extends to joint contractors, and one who has paid more than his share of the joint obligation may recover contribution from his cocontractors. 6 R. C. L. p. 1046.

While assumpsit for money paid by a surety is a modern remedy, yet courts of equity have not been ousted of their jurisdiction in matters of this kind on account of the assumption thereof by the law courts,

but their jurisdiction is now considered concurrent; and in many cases, as here, assumpsit does not furnish adequate relief. 6 R. C. L. p. 1059.

In 4 Pomeroy's Equity Jurisprudence (3d Ed.), § 1418, under the title of "Contribution," that author used the following language:

"Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his cosureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given between all those who are jointly, or jointly and severally, liable on contract or obligation in the nature of contract."

The doctrine of contribution rests upon the maxim, Equality is equity. The equitable jurisdiction still remains and has some important advantages. All the cosureties and the principal debtor being parties to the equity suit, the liabilities of each and their exoneration by the principal debtor can be adjusted and established by a single decree. If one or more of the cosureties are insolvent, the plaintiff can in equity obtain a proportionate increase of contribution from the others who are solvent. See the many authorities cited in note 1 to the above-named section.

In Stace's Michigan Chancery Practice, § 554, it is said:

"When two or more persons are jointly liable for the payment of the same debt or obligation and one has paid the entire claim, he may have contribution from his codebtors or obligees in cases where it would be equitable and just. Courts of law have concurrent jurisdiction with courts of equity to compel contribution, but in cases where the remedy at law would be incomplete, inadequate or doubtful, a bill in equity is

the proper remedy"—citing 1 Story, Equity Juris. §§ 483-505; *McGunn* v. *Hanlin*, 29 Mich. 476; *Smith* v. *Rumsey*, 33 Mich. 183; *Edsell* v. *Briggs*, 20 Mich. 429; *Rynearson* v. *Turner*, 52 Mich. 7 (17 N. W. 219); *Stewart* v. *Goulden*, 52 Mich. 143 (17 N. W. 731).

See, also, *Shurlow* v. *Lewis*, 170 Mich. 493 (136 N. W. 484, 41 L. R. A. [N. S.] 975).

The Michigan cases above cited bear more or less strongly upon this question.

We are of the opinion that the court below did not err in overruling the said demurrers, and its order is therefore affirmed, with costs to the complainant, and said cause will be remanded to the court below for further proceedings under the rules of practice.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.