Jose ACEVEDO, Plaintiff,

v.

VAN DORN PLASTIC MACHINERY COMPANY, Defendant and Third-Party Plaintiff,

v.

CUT RATE PLASTIC HANGER, INC., Third-Party Defendant.

Bankruptcy No. 883–31699–20.

United States Bankruptcy Court, E.D. New York.

June 18, 1986.

1. 311 U.S. 273, 278–279, 61 S.Ct. 196, 199–200,     85 L.Ed. 184 (1936).

Paul S. Mirman, P.C., Brooklyn, N.Y., for plaintiff.

Ford Marrin Esposito & Witmeyer, New York City, for defendant and third-party plaintiff.

Wilson Elser Moskowitz Edelman & Dicker, New York City, for third-party defendant.

ROBERT JOHN HALL, Bankruptcy Judge.

This matter was referred to this court by Chief Judge Jack B. Weinstein of the District Court of the Eastern District of New York, for a hearing and report by the Bankruptcy Court acting as Special Master. The parties suggested and the court agreed to consider the issues based upon the pleadings submitted in the underlying District Court case. In District Court, defendant Cut Rate Plastic Hangers ("Cut Rate") moved to dismiss Van Dorn Machinery's ("Van Dorn") third party complaint asserting that Van Dorn's claim was barred by Cut Rate's bankruptcy. As Special Master, the court respectfully suggests that since Cut Rate did not notify Van Dorn about the subject claim until it was too late for Van Dorn to act in Bankruptcy Court, Cut Rate's bankruptcy only bars Van Dorn's complaint procedurally. Procedurally, the automatic stay against actions against the debtor has not expired, and the case should be dismissed unless Van Dorn moves to vacate the stay.

## STATEMENT OF FACTS

According to the Complaint, Jose Acevedo ("Acevedo") was injured while working on a Van Dorn plastic injection molding

machine at the factory of his employer, Cut Rate, on August 20, 1981. (*See* Complaint ¶ 18, Battari Aff., Ex.B.) Two years later, on September 2, 1983, Cut Rate filed a Chapter 11 proceeding. In Schedule A–3 to its Petition, Cut Rate listed Van Dorn as a general unsecured creditor with a claim for $8,952.14. The debt was for an unrelated business obligation between Cut Rate and Van Dorn. (*See* Cut Rate's "Memorandum of Law in Support of Third-Party Defendant's Motion to Dismiss" at 3.) On April 26, 1984, Cut Rate's Plan of Reorganization was confirmed.

On June 25, 1984, Acevedo commenced this action in District Court against Van Dorn, alleging that the machine Van Dorn sold to Cut Rate was defectively designed, and caused Acevedo's August, 1981 accident and injuries. The subject of Cut Rate's motion to dismiss is Van Dorn's subsequent Third-Party Complaint against Cut Rate for contribution and indemnification. The parties agree that prior to Acevedo's suit on June 25, 1984, Van Dorn had no knowledge of Acevedo's accident nor of the possibility of his claims. (*See* Certification of Charles D. Cline, dated February 5, 1986, ¶ 4, and Bottari Aff. ¶¶ 10–14.)

## CONTRIBUTION AND INDEMNITY CLAIMS ARE ORDINARILY PRE–PETITION CLAIMS 11 U.S.C. § 101(4)

The issue the parties briefed is whether Van Dorn's claim arose pre-petition or post-petition. The parties presumed that if Van Dorn's claim for contribution and indemnity arose before Cut Rate's bankruptcy was filed, the claim would be subject to the jurisdiction of the Bankruptcy Court. Conversely, if the claim arose post-petition, Van Dorn's case could proceed in District Court.

The leading case on the issue is a controversial decision from the Third Circuit. In *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), the court held that a claim arising post-petition for indemnity and contribution stemming from pre-petition negligence is not

subject to bankruptcy administration, because under New York state law, indemnity claims arise only after the underlying cause of action is commenced. The Second Circuit, however, has suggested in dicta possible disagreement with the *Frenville* decision:

> We are not as certain as the District Court that, if we reached the issue, we would follow *Frenville* and hold the stay inapplicable to Paine Webber's third-party complaint. The broad definition of "claim" in the Bankruptcy Code, a "right to payment, whether or not such right is ... unliquidated ... contingent ... unmatured ...," 11 U.S.C. § 101(4)(A), creates a substantial question whether the stay applies to the third-party complaint. In view of our disposition of this appeal, we do not decide that question.

*In re Baldwin-United Corporation Litigation*, 765 F.2d 343, 348 n. 4 (2d Cir.1985).

At least three cases subsequent to *Frenville* have identified the following flaws in the Third Circuit's decision that contribution and indemnity claims be treated as post-petition claims:

1) *Frenville* mistakenly applied state law rather than federal bankruptcy law, to determine when creditors' claims arose, counter to the Supreme Court holding in *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). *In re Johns-Manville*, 57 B.R. 680, 689 (Bankr.S.D.N.Y. 1986); *In re Yanks*, 49 B.R. 56, 58 (Bankr. S.D.Fla.1985).

2) Congress intended an extremely broad definition of "claim" for bankruptcy administration, which would include a subrogation claim, and the Supreme Court approved that congressional intent generally in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). *In re Johns-Manville*, 57 B.R. 680, 687–88; *Matter of Balwin-United Corp.*, 48 B.R. 901, 903 (Bankr.S.D.Ohio 1985) *citing* House Report No. 95–595, 95th Cong., 1st Sess. 309 (1977); and Senate Report No. 95–989, 95th Cong. 2d Sess. 21 (1978), U.S.Code Cong. &

Admin.News 1978, p. 5787; *In re Yanks,* 59 B.R. 56, 57 *citing Ohio v. Kovacs.*

3) Equality among creditors under bankruptcy law is frustrated if a surety by waiting to file suit for recovery against a debtor, could prejudice the rights of other creditors. *In re Johns-Manville,* 57 B.R. 680, 690; *In re Yanks,* 59 B.R. 56, 56 *citing Williams v. U.S. Fidelity & Guaranty Co.,* 236 U.S. 549, 557, 35 S.Ct. 289, 291, 59 L.Ed. 713 (1915).

■■■ Since the Second Circuit appears to be leaning away from *Frenville,* and since recent case law has exposed significant shortcomings in the case, this court would decline to follow *Frenville,* and find instead that Van Dorn's claim for indemnity and contribution is a pre-bankruptcy petition claim against the bankruptcy estate, subject to Bankruptcy Court jurisdiction.

## VIOLATION OF THE AUTOMATIC STAY 11 U.S.C. § 362

■■■ In order to insure exclusive Bankruptcy Court jurisdiction over a debtor's financial affairs, 11 U.S.C. § 362 automatically stays the commencement of a judicial proceeding outside of Bankruptcy Court by a pre-petition creditor against a debtor, until the debtor's bankruptcy is closed or dismissed. The automatic stay does not prohibit the prosecution of an action against a debtor based upon a claim that arose after the filing of the bankruptcy petition. *In re M. Frenville Co; Turner Broadcasting Sys. Inc. v. Sanyo Elec., Inc.* 33 B.R. 996 (Bankr.N.D.Ga.1983), aff'd 742 F.2d 1465 (11th Cir.1984). In light of the court's suggestion that Van Dorn's claim arose pre-petition, the court suggests that Van Dorn must move to vacate the automatic stay before proceeding further in District Court. In light of the court's suggestion below that Van Dorn's claim is non-dischargeable in bankruptcy, the court would be inclined to grant a motion to vacate the stay for "cause" under 11 U.S.C. § 362(d)(1).

## VAN DORN'S CLAIM IS NON–DISCHARGEABLE

The court presumes that non-dischargeability constitutes "cause" to lift the automatic stay against litigation of a claim, but the parties did not brief the nondischargeability issue in this case: whether a creditor who is unaware of his claim against a debtor before the bankruptcy plan is confirmed can later obtain a non-dischargeable judgment of his claim.

11 U.S.C. § 1141(d)(1)(A) provides as follows:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan;

In short, the Code provides generally that a creditor of a Chapter 11 debtor corporation loses his pre-petition claims after the debtor's bankruptcy reorganization plan is confirmed, even if he was not notified of the bankruptcy or his right to a share of the bankruptcy estate.

■■■ Four Circuit Courts have found 11 U.S.C. § 1141(d)(1)(A) and its predecessor statutes unconstitutional, relying on *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and *City of New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). *Broomall Industries v. Data Design Logic Systems,* 786 F.2d 401 (Fed.Cir.1986); *Reliable Electric v. Olson Construction,* 726 F.2d 620 (10th Cir.1984); *In re Intaco Puerto Rico Inc.,* 494 F.2d 94 (1st Cir. 1974); *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3d Cir.1967). All four Circuit Court decisions hold that 11 U.S.C. § 1141(d)(1)(A) denies creditors due process

when creditors have insufficient notice of the bankruptcy case to file a claim. In the opinion of this court, due process should also require that a debtor notify a creditor of his claim when the creditor is unlikely to know about the claim otherwise. A creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy.

■ In all bankruptcy cases, the debtor must list all claims against the bankruptcy estate. 11 U.S.C. § 521. As noted above, the definition of "claim" is very broad under 11 U.S.C. § 101, and properly includes causes of action for indemnity and contribution.[1] Injured employees in New York State often sue manufacturers of their employers' machines, and subsequently, those manufacturers commonly seek indemnity and contribution from the employer. *See Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); N.Y. CPLR Art. 1403 et seq. Since Cut Rate knew that Mr. Acevedo was injured on a Van Dorn machine before the bankruptcy, they should have told Van Dorn about the accident. In this case, the debtor's schedules filed with the bankruptcy petition do not list Van Dorn as having an unliquidated contingent claim, and the parties do not dispute that Van Dorn had no other notice of its claim.[2] Therefore, 11 U.S.C. § 1141(d)(1)(A) unfairly strips Van Dorn of its claim, and consequently, the court suggests that Cut Rate's claim is non-dischargeable in bankruptcy.[3] *Reliable Electric v. Olson Construction*, 726 F.2d 620, 622–23.

## CONCLUSION

In summary, the court finds that indemnification and contribution claims stemming from pre-petition injuries generally fall under the debtor's reorganization in bankruptcy. In this case, the court respectfully suggests that since the debtor failed to notify Van Dorn of its potential claim, the claim is non-dischargeable. Since the claim is non-dischargeable in bankruptcy, this court would be inclined, based on the facts before it today, to vacate the automatic stay against actions against the debtor, provided that Van Dorn makes such a motion (or submits a stipulation to be so ordered) under 11 U.S.C. § 362(d)(1).

---

1. Contingent, disputed and unliquidated claims are often difficult to estimate. Nonetheless, such claims are accounted for in 11 U.S.C. § 502(c).

2. Naturally, the debtor must file his petition in good faith, and creditors must file their claims in good faith. In this case there is not a hint of collusion between Van Dorn and Cut Rate to defer Van Dorn's claim, nor does Cut Rate suggest that Van Dorn was playing possum with the bankruptcy estate to obtain a non-dischargeable judgment.

3. Cut Rate creditors who are provided for under its reorganization plan will suffer some loss if Van Dorn obtains a non-dischargeable judgment larger than Cut Rate's insurance coverage. Those creditors, however, share the responsibility for their loss. The creditors had numerous opportunities to examine the debtor to insure that his plan included all claims, and subsequently, the creditors voted to accept Cut Rate's plan.