**L.F. ROTHSCHILD & CO., INC., Plaintiff,**

v.

**John M. ANGIER, Defendant.**

**Civ. A. No. 87–2055–T.**

United States District Court, D. Massachusetts.

March 25, 1988.

Edward T. Robinson, William B. Darrow, Gaston Snow & Ely Bartlett, Boston, Mass., for plaintiff.

Mark N. Polebaum, Jennifer Kemp, Hale & Dorr, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

This case requires the court to determine the scope of a discharge issued in an individual bankruptcy proceeding pursuant to 11 U.S.C. § 727.

### I.

Plaintiff L.F. Rothschild & Co. employed defendant John Angier as a securities broker from 1976 through 1980. Defendant traded a number of accounts, including that of his sister, Mrs. Judith Kershner.

Rothschild terminated Angier's employment in April, 1980. At that time, Mr. Bob Swanson, an agent of Rothschild, told Kershner that Angier had been accused of misconduct and "churning" accounts.

On January 12, 1981, Angier filed a Chapter 7 individual bankruptcy petition. As required, he submitted a schedule listing the names and addresses of his creditors. That list of creditors included Rothschild's name. Rothschild's claim was characterized as "disputed," and was assigned no value. Angier's discharge was granted on July 1, 1981, without objection by any creditor.

Kershner subsequently discovered that Angier had "churned" her account, causing substantial losses. On June 1, 1983, she brought an action in California against Rothschild, alleging misconduct in the trading of her account. Rothschild cross-claimed against Angier. In turn, Angier answered by asserting, *inter alia,* that his discharge in bankruptcy voided any claims by Rothschild.

The parties submitted the claims to arbitration in 1984. Angier executed the arbitration agreement on June 22, 1984, but continued to press his discharge defense in the arbitration proceeding.

On May 28, 1985, the arbitrators issued their decision. They found that Angier had indeed churned the Kershner account, and ordered that Rothschild pay Kershner damages of $55,767.96. The arbitrators further stated that Rothschild would be allowed to recover the $55,767.96 from Angier on its crossclaim. Rothschild then brought a proceeding in California Superior Court to confirm the arbitrators' award. After a hearing, at which Angier did not appear, the Superior Court confirmed the award on April 27, 1987.

Rothschild brought the instant action to recover its California judgment against Angier. The Complaint alleges that Rothschild is entitled to judgment under the Full Faith and Credit Statute, 28 U.S.C. § 1738 (Count I); and that Angier breached his contract to abide by the arbitrators' decision (Count II).[1] Angier has counterclaimed, seeking a declaration that the California judgment and arbitrators' award are void, and an injunction against further efforts to collect what he says is a discharged debt.

Rothschild has moved for summary judgment or judgment on the pleadings as to

1. The legal sufficiency of Count II is not before the court.

Count I. Angier has also moved for summary judgment, arguing that Rothschild's recovery is precluded by the discharge granted on July 1, 1981. In addition, Rothschild has moved to dismiss Angier's counterclaim, on the grounds that the discharge does not cover the instant case.

## II.

Rothschild argues that it is simply trying to enforce a California judgment rendered post-petition. Since Angier had a full opportunity to assert his defenses in the California proceedings, and the California judgment was never appealed, Rothschild argues that Angier's liability is *res judicata,* and may not be relitigated here.

■ But, notwithstanding the Full Faith and Credit Statute, a bankruptcy discharge may operate to void subsequent state judgments. The Bankruptcy Code states:

A discharge in any case under this title—

(1) voids any judgment *at any time obtained,* to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ...

(2) operates as an injunction *against the commencement or continuation of an action,* the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ...

11 U.S.C. § 524(a) (emphasis supplied). The California judgment would be void, therefore, if the underlying debt had been discharged. *See In re Fernandez–Lopez,* 37 B.R. 664 (9th Cir.Bankr.App.1984) (state judgment could be collaterally attacked if obtained in violation of discharge order).

The applicability of Angier's discharge to the original debt is governed by several provisions of the Bankruptcy Code. Under 11 U.S.C. § 727(b), a Chapter 7 discharge

discharges the debtor from all debts that arose before the date of the order for relief under this chapter ...

The Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(11). A "claim" is defined, in relevant part, as

[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured

11 U.S.C. § 101(4)(A). This language from the 1978 Code substantially broadened the definition of "claim", eliminating the prior Act's requirement of "provability". According to the legislative history, "this broadest possible definition ... contemplates that all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case." H.Rep. No. 595, 95th Cong. 2d Sess. 309, *reprinted in* 1978 U.S.Code, Cong. & Admin.News, 5787, 5963, 6266 (emphasis supplied).

Relying upon Congress' expansive definition of "claim", courts have applied bankruptcy discharges and automatic stays to post-petition claims arising out of the debtor's pre-petition conduct, even when the debtor's cause of action was not mature under state law until after the bankruptcy filing. *See In re Black,* 70 B.R. 645 (Bankr.D.Utah 1986) (automatic stay applied to cross-claim for indemnification or contribution arising out of pre-petition business transaction, even when, under state law, claimant's cause of action would first arise upon commencement of litigation against it); *Acevedo v. Van Dorn Plastic Machinery Co.,* 68 B.R. 495 (Bankr.E.D.N.Y.1986) (indemnity and contribution actions stemming from pre-petition tort were pre-petition claims subject to bankruptcy court jurisdiction); *In re A.H. Robins Co.,* 63 B.R. 986 (Bankr.E.D.Va.1986) (whether a claim arises pre- or post-petition depends on when debtor's conduct, on which the claim is based, occurred; thus, Dalkon Shield claim arose, for bankruptcy purposes, when product was inserted, and not when claimant first became aware of her injury); *In re Edge,* 60 B.R. 690 (Bankr.M. D.Tenn.1986) (under the Bankruptcy Code, a claim against a Chapter 7 debtor "arises at the time of the negligent act, notwithstanding that access to the courts or the running of the statute of limitation may be timed from some other point in the relationship between tortfeasor and victim"); *In re*

*Johns–Manville Corp.*, 57 B.R. 680 (S.D.N.Y.1986) (since Congress intended "claim" to include "remote or contingent" obligations, a claim arises, for bankruptcy purposes, at the time when the acts giving rise to the alleged liability were performed, and the automatic stay applies to indemnification or contribution actions based on such claims); *Matter of Baldwin–United Corp.*, 48 B.R. 901 (Bankr.S.D.Ohio 1985) (automatic stay applied to post-petition claim for contribution or indemnity based on pre-petition conduct). *Cf. Matter of M. Frenville, Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

This rule puts all creditors on an equal footing, and allows the debtor a fresh start by resolving, in one forum, all claims based upon its pre-petition conduct. These purposes would be defeated if some creditors could turn pre-petition claims into post-petition claims simply by bringing an action for contribution.

■ In the instant case, the California Superior Court judgment and the arbitrators' award were both based upon stock transactions that Angier made before he filed for bankruptcy. Because the underlying conduct occurred pre-petition, Angier's discharge covered any "claims", as defined in 11 U.S.C. § 101(4)(*a*), arising therefrom. The award and judgment later obtained by Rothschild were void, therefore, under 11 U.S.C. § 524(a).

### III.

■ Rothschild also maintains that Angier's discharge was void as against it, because it was not adequately put on notice by Angier's bankruptcy petition.

In Chapter 7 cases, the debtor is required to file a list of creditors and a schedule of assets and liabilities with the court. 11 U.S.C. § 521(1). A Chapter 7 discharge is ineffective against creditors not listed or scheduled. 11 U.S.C. § 523(a)(3).

Here, Angier indicated on his schedule that Rothschild had a claim against him. As Rothschild was listed as a creditor, it received notice of the pending bankruptcy case, the creditors' meeting, and the deadline for objections to discharge.

That notice was clearly adequate. The statute requires only that debts be listed and scheduled "with the name, if known to the debtor, of the creditor to whom such debt is owed" in time to permit timely filing of a proof of claim, or a request for a determination of dischargeability. 11 U.S.C. § 523(a)(3). Angier's schedule complied fully with the statute by listing Rothschild's name and address, and stating that Rothschild was the holder of a disputed claim.[2]

There is no merit to Rothschild's suggestion that it was entitled to a more complete description of Angier's defalcations. Once Rothschild received notice of the pending bankruptcy case,[3] it was bound to inquire as to the extent of any claim it may have had, and to object to any discharge that might endanger its interests. *See Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) ("When the holder of a large, unsecured claim ... receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its

---

**2.** Angier's schedule did not list Kershner as a creditor. Rothschild argues that, because the list did not include Kershner, Rothschild had no notice of any claim for churning in the Kershner account. Unquestionably, the bankruptcy court could not have discharged a claim asserted by Mrs. Kershner, if she had no notice or knowledge of the bankruptcy proceeding. But, that does not change the fact that Rothschild had proper notice of the pending bankruptcy case, and had been informed that its claims against Angier could be extinguished by a bankruptcy discharge.

**3.** Timely notice to creditors of the fact that a bankruptcy case is pending appears to be the minimum notice necessary for discharge. Under 11 U.S.C. § 523(a)(3), the debtor's failure to schedule or list a creditor will be excused if the creditor had "actual knowledge of the case" in time for timely filing of a proof of claim or request for determination of dischargeability. Importantly, the statute does not require actual knowledge of the specifics of a claim; rather, a debt may be discharged if the creditor is informed of the "case", *i.e.*, the bankruptcy proceeding as a whole. Measured against this standard, the notice Rothschild received was more than sufficient.

claim may be affected, and it ignores the proceedings to which the notice refers at its peril."); *Acevedo v. Van Dorn Plastic Machinery Co., supra,* 68 B.R. at 499 n. 3 (other creditors bear loss when court makes non-dischargeable the claim of creditor who was not notified of bankruptcy proceedings, because "[t]he creditors had numerous opportunities to examine the debtor to insure that his plan included all claims, and subsequently, the creditors voted to accept" the plan).

Further, the statutory procedures followed by Angier met the requirements of Fifth Amendment's Due Process Clause. The bankruptcy court provided plaintiff with notice of the proceeding, and an opportunity to be heard. *See Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

### IV.

Since Rothschild received adequate notice of Angier's bankruptcy proceeding, it cannot object to Angier's discharge at this late date. That discharge precludes Rothschild from bringing post-petition claims based upon Angier's pre-petition conduct.

An order will issue.

### ORDER

For the reasons set forth in an accompanying memorandum, the court hereby orders as follows:

1. Plaintiff's motion for judgment on the pleadings or summary judgment as to Count I is DENIED.

2. Plaintiff's motion to dismiss defendant's counterclaim is DENIED.

3. Defendant's motion for summary judgment is ALLOWED as to Count I of the complaint.

It is so ordered.