## In re PRODUCTION PLATING, INC., Debtor.

### Bankruptcy No. 84–03036–G.

United States Bankruptcy Court, E.D. Michigan, S.D.

Aug. 11, 1988.

Steven G. Howell, John G. Colucci of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for Production Plating, Inc., debtor.

Martin L. Fried of Goldstein & Bershad, Southfield, Mich., for Alan A. May, Personal Representative of the Estate of Burnell Rawls, III, Deceased.

Anne Marie Burr, Detroit, Mich., for Branson Cleaning Equipment Co.

Haskell H. Shelton, Jr., Midland, Mich., for PPG Industries.

### MEMORANDUM DECISION AND ORDER ENFORCING CONFIRMED PLAN

RAY REYNOLDS GRAVES, Chief Judge.

This reopened chapter 11 case is before the Court on Debtor's Motion for Order

Enforcing Confirmed Plan of Reorganization. The Court must decide whether Section 1141(d)(1)(A) of Title 11 and the bar order entered by this Court in Debtor's bankruptcy case constitute a complete bar and defense to claims that Respondents have brought in state court.

After considering the briefs and exhibits submitted by Debtor and three Respondents to the motion, the arguments of counsel, and its independent research, the Court now grants Debtor's request for an order enforcing the confirmed plan and further directs that Respondents dismiss Debtor from pending Wayne County litigation in which Respondents assert a claim of intentional tort and claims of contribution and indemnity based on Debtor's prepetition conduct.

The Court finds the following facts. Debtor filed a chapter 11 petition in August 1984, and this Court entered its order confirming Debtor's modified plan of reorganization on August 11, 1986. Debtor's plan, in Article X, provided that:

> all creditors not otherwise scheduled by the debtors or who have not previously filed claims against the Debtors with the Court must file such claims within 60 days after the date of confirmation of the Plan, or they shall be barred forever from making such claims.

The Confirmation Order provided, in par. G., that it would have:

> ... the effect set forth in 11 USC Section 1141, and shall vest all of the property of the estate, free and clear of all claims and interest of creditors ... except as otherwise provided in the Plan and in this Order ...

The Confirmation Order further provided, in par. B, that:

> ... this Order discharges the Debtor from any Debt that arose before the date of such confirmation ... All creditors whose debts are discharged by this Order are hereby permanently enjoined from instituting any action ... to collect such debts as liabilities of the Debtor herein.

In May 1987, the Personal Representative of the Estate of Debtor's former employee (Plaintiff # 1) and the deceased employee's wife joined Debtor as a defendant in Wayne County litigation that had been initiated against three other defendants in October 1985. Plaintiff # 1, in the original complaint, alleged only that the three named defendants were jointly and severally liable for the June 1984 injury and death of Debtor's employee. However, in May 1987, Plaintiff # 1 and the employee's wife amended their complaint and asserted claims based on allegedly tortious acts of Debtor, acts that occurred on June 5, 1984, and acts that allegedly resulted in the employee's death on June 9, 1984. A few days later, two of the three original defendants asserted third-party claims against Debtor, claiming rights of contribution or indemnity with respect to potential liability arising out of the June 1984 death.

The respondents, through their attorneys, knew about Debtor's chapter 11 bankruptcy case before this Court entered its order confirming the plan in August 1986. Attorneys for Plaintiff # 1, the deceased employee's wife, and the three original defendants attended a deposition of Debtor's Secretary–Treasurer on June 20, 1986. At that deposition, the Secretary testified to Debtor's August 1984 bankruptcy filing. Moreover, the Court has no reason to discredit the sworn statement of Debtor's President and Chief Operating Officer that in August 1984, late Fall of 1984, and early 1985, he told first the deceased employee's father and later the attorneys for Plaintiff # 1 and for the deceased employee's wife about the chapter 11 bankruptcy case. Finally, Respondents do not contradict the sworn statement of Debtor's President that, during the course of Debtor's bankruptcy case, the attorneys for Plaintiff # 1 and the deceased employee's wife represented that their clients intended to bring suit against only the three original defendants.

The Court presumes that one respondent received mailed notices of bankruptcy proceedings because Debtor listed that respondent on the matrix that accompanied the chapter 11 petition and scheduled the same respondent as an unsecured trade creditor

in the bankruptcy case. However, Debtor did not schedule Plaintiff # 1, the employee's wife, nor one of the original defendants as creditors. Neither did Debtor schedule any of the respondents as holders of contingent contribution-indemnity claims.

None of the respondents filed, in Debtor's bankruptcy case, claims for damages or potential damages resulting from Debtor's conduct on June 5, 1984. Plaintiff # 1 and the deceased employee's wife did, however, process claims under the Michigan Worker's Disability Compensation Act. On March 5, 1986, Plaintiff # 1 and the deceased employee's wife settled, through Debtor's insurance carrier, "all claims of any nature whatsoever, known or unknown, for any and all liability" under the Act for $50,000. (See Agreement to Redeem Liability). As a result, at the time of confirmation and the entry of the order establishing a bar date for filing claims, the worker's compensation claim had been settled and was not a claim against the chapter 11 debtor.

The Court finds, on the basis of the affidavit submitted by Debtor's President and Chief Operating Officer, that neither he nor Debtor had preconfirmation knowledge of a potential intentional tort claim based on the employee's death in June 1984. It follows and the Court finds that Debtor knew of no contingent contribution or indemnity claims arising from as yet unasserted common liability between Debtor and Respondents. Therefore, despite Debtor's knowledge of Respondents' existence, despite Debtor's recognition of one Respondent as the holder of an unsecured trade claim, and despite Debtor's recognition of Plaintiff # 1 as a worker's compensation claimant, Debtor did not know about the respondents' status as holders of claims for intentional tort, contribution, or indemnity. Thus, the Court characterizes Respondents as unknown creditors and their claims as unknown claims.

The Court also accepts as true Respondents' assertions that they believed they held no claims against the employer-debtor until December 1986.

Debtor maintains, nevertheless, that the intentional tort claim asserted by Plaintiff # 1 and the third-party contribution and indemnity claims asserted by the original defendants existed as prepetition claims or debts within the meaning of section 101(11) of Title 11. These claims, Debtor submits, were completely discharged by the 1986 confirmation order even though Debtor did not schedule the claims and the claimants did not receive official notices of the chapter 11 bankruptcy proceedings.

Third-party-plaintiff Respondents counter that their claims for contribution or indemnity arose after this Court confirmed Debtor's plan of reorganization. Therefore, they say, the discharge does not affect their claims. Respondents reason that the exclusivity provision of the Worker's Disability Compensation Act prevented the Personal Representative from filing a claim against Debtor on an intentional tort theory. They, the argument continues, had no contribution or indemnity claims against the debtor-employer unless and until the employee had a claim.

Respondents also contend that a claim for contribution or indemnity against a joint tortfeasor arises when one tortfeasor pays more than his share of an underlying claim, not when the joint tortfeasors commit the underlying tortious act.

Alternatively, Respondents argue that if the claims arose prepetition, due process considerations preclude a discharge of these claims because the claimants had no formal or official "notice" of bankruptcy proceedings. Indeed, Plaintiff # 1 contends that:

> [t]he only relevant factor is whether or not this Creditor received requisite notices from the Bankruptcy Court advising this Creditor of significant bankruptcy occurrences [including the] bar date for filing claims, opportunity to vote on the Plan of Reorganization, and confirmation hearing.

Plaintiff # 1's Brief in Reply to Motion, p. 17.

■ Section 1141(d)(1)(A) of Title 11 provides that confirmation of a plan discharges a debtor from "any debt that arose

before the date of such confirmation" whether or not a proof of claim based on the debt is filed, unless subsection (d)(1), the debtor's plan of reorganization, or the court's order confirming the plan provide differently. The Bankruptcy Code defines "debt" as "liability on a claim" but does not define the words "arose" or "discharge." 11 U.S.C. § 101.

When did the claims "arise?" Debtor's allegedly tortious acts occurred in June 1984, two months before Debtor filed its chapter 11 petition. Nevertheless, third-party plaintiff Respondents argue that Plaintiff # 1's claim for intentional tort as well as the third-party claims for contribution or indemnity arose in December 1986, several months after this Court confirmed Debtor's plan of reorganization, that is, on the decisional date of *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882 (1986).

The Michigan Supreme Court, in *Beauchamp,* considered an employee's right to assert intentional tort claims against an employer in spite of the Worker's Disability Compensation Act's exclusivity provision and despite the absence of express statutory language allowing civil actions for torts. The Court concluded that the Legislature had never intended "that the exclusive remedy section of the act be construed to preclude a plaintiff's recovery for injuries suffered in an intentional tort ..." Id. at 11, 398 N.W.2d 882; *Kissinger v. Manor,* 92 Mich.App. 572, 285 N.W.2d 214 (1979). Indeed, the *Beauchamp* Court cited legislative history indicating that preventing employer liability for intentional torts was "never part of the bargain struck" when the Legislature addressed the problem of benefits for employees injured during the course of their employment. Id. 427 Mich. at 16, 398 N.W.2d 882.

The *Beauchamp* Court emphasized that "actions for intentional torts are not barred" and remanded the case for further proceedings in the trial court. The *Beauchamp* Court did not say, and this Court will not infer that *Beauchamp* overruled old precedent or announced a new rule of law. Indeed, the Michigan Supreme Court

implicitly held that the law it enunciated in December 1986 had been in effect since the Legislature enacted the worker's compensation statute and that Beauchamp's "claims," if any, existed under Michigan law at least as early as April 1982, when Beauchamp filed his complaint in the circuit court. Id. at 4, f.n. 1, 398 N.W.2d 882.

This Court rejects Respondents' argument that their claims arose or accrued in December 1986. Respondents direct the Court to no cases holding that a plaintiff's claim or cause of action arises or accrues on the date a court interprets the effect of a statute. Moreover, the Court's research reveals no support for the argument. On the contrary, Michigan courts necessarily look to statutes of limitation and to specific instructions in the Supreme Court decisions to determine which claimants may benefit from a new or modified rule of law. *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1978); *Murray v. Beyer Memorial Hospital,* 409 Mich. 217, 293 N.W.2d 341 (1980); *Bauman v. Grand Trunk Western Railroad Co.,* 41 Mich. App. 611, 200 N.W.2d 444 (1972); *Hicks v. Agney,* 413 Mich. 556, 321 N.W.2d 383 (1982). For example, under Michigan law, a claim of tort accrues and the statute of limitations begins to run "[o]nce all the elements of an action ... including the element of damage are present." *Connelly v. Paul Ruddy's Equipment Repair & Service Co.,* 388 Mich. 146, 200 N.W.2d 70 (1972). In addition, "[i]n products liability cases, a cause of action accrues when a plaintiff by exercise of reasonable diligence discovers or should have discovered that he or she has a possible cause of action." *SS Aircraft v. Piper Aircraft Corp.,* 159 Mich.App. 389, 406 N.W.2d 304 (1987); *Bonney v. The Upjohn Co.,* 129 Mich.App. 18, 24, 342 N.W.2d 551 (1983), *lv. den.* 419 Mich. 868 (1984). In the case at bar, all the elements, including damage were present in June 1984. Therefore, this Court finds that Plaintiff # 1's claim for intentional tort arose in June 1984 and is a prepetition claim.

■ The Court must decide whether the third-party state-law claims for contribu-

tion and indemnity are also prepetition or preconfirmation claims under the Bankruptcy Code. Under Section 101(4) of Title 11, a "claim" is:

(A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured;

Congress intended the definition of a claim to be:

the broadest possible definition ... [contemplating that] all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 595, 95th Cong.2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6266; see also S.Rep. No. 989, 95th Cong., 2d Sess. 21–22, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5807–08 (virtually identical statement).

As explained by the legislative history, Congress intended that interested parties submit claims asserting rights to payment for even unliquidated, unmatured, disputed, contingent, and equitable claims for possible allowance and treatment in the bankruptcy case. Congress wanted holders of all "legal obligations" to participate in the bankruptcy process and to share in the distribution of a chapter 7 debtor's estate or be treated in a plan of reorganization. This is because a discharge extinguishes, as if by a full satisfaction, all legal obligations and enables a reorganized debtor to conduct business and acquire property without subjecting it to the claims of prepetition creditors. *Black's Law Dictionary* (5th edition). In other words, although a reorganized debtor may have moral obligations to creditors, it has no legally enforceable duty to pay them. *State ex rel. Caton v. Anderson,* 159 Ohio St. 159, 111 N.E.2d 248, 250 (1953).

■ Thus, this Court concludes that Congress intended contingent claims for contribution or indemnity based on prepetition legal obligations between joint tortfeasors be dealt with in the bankruptcy case. Sec-

tion 502(c) provides a mechanism for the acceleration of creditors' claims; they can be estimated or disallowed after a consideration of the underlying merits. Under the Bankruptcy Code creditors may litigate contingent and even equitable claims that can be converted into monetary claims. 11 U.S.C. §§ 502, 101(4). In appropriate cases, moreover, the federal court may abstain, allowing state courts to resolve certain cases. 11 U.S.C. § 305.

■ The bankruptcy court determines the existence and validity of a contingent claim for contribution or indemnity based on the claimant's substantive rights under state law or other nonbankruptcy law. *In re Spanish Trails Lanes, Inc.,* 16 B.R. 304 (Bankr.D.Ariz.1981). However, once the court determines that applicable nonbankruptcy law recognizes the claimant's substantive right, the bankruptcy judge is free to shape the relief available to the claimant. C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1451 (1971). *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *Leeds Homes, Inc. v. National Acceptance Co. of America,* 332 F.2d 648 (6th Cir.1964); *Huggins v. Graves,* 210 F.Supp. 98, 105 (D.C.Tenn. 1962), *aff'd,* 337 F.2d 486 (6th Cir.1964).

An example of the federal court's flexibility in dealing with a contribution claim in the nonbankruptcy context is *Huggins.* In *Huggins,* the Sixth Circuit affirmed a judgment of contribution even though no judgment held the contribution defendant liable to the original plaintiff. Although this *relief* was not in accordance with state law, the Court said that the "basic question [in deciding a claim for contribution] is whether the parties are actually legally obligated, not whether the obligation has been reduced to judgment." *Huggins,* 337 F.2d at 489.

Contribution is a doctrine that originates in equity and is founded on principles of natural justice. *Moyses v. Spartan Asphalt Paving Co.,* 383 Mich. ·314, 174 N.W.2d 797 (1970); *Caldwell v. Fox,* 394 Mich. 401, 231 N.W.2d 46 (1975); *Lorimer v. Julius Knack Coal Co.,* 246 Mich. 214,

224 N.W. 362 (1929). The equitable roots of a contribution claim are recognized by most state courts. *Blum v. Good Humor Corp.*, 57 A.D.2d 911, 394 N.Y.S.2d 894 (N.Y.App.Div.1977). Although contribution is now statutory in many states, courts of equity will take jurisdiction where an equitable remedy would be more effective or superior to a remedy at law. *Comstock v. Potter*, 191 Mich. 629, 158 N.W. 102 (1916).

Furthermore, contribution is substantive and exists as an independent cause of action, distinct from the underlying tort claim which gives rise to it. *Sziber v. Stout*, 419 Mich. 514, 358 N.W.2d 330 (1984). In *Sziber*, Justice Ryan explained that Michigan law is consistent with the doctrine of contribution set as forth by the Supreme Court of Wisconsin:

> The nature of the newly accrued cause of action [i.e. contribution] is *not* dependent on whether the obligation discharged resulted from contract or tort. The cause of action that accrues depends not whit upon the origin of liability. It is enough that joint liability from whatever source exists ...

*Sziber*, 258 N.W.2d at 335.

Clearly, the action for contribution recognizes a preexisting right of recovery for a co-wrongdoer. Id. at 336. In *Sziber*, Justice Ryan agreed with the Seventh Circuit's explanation of the right of contribution as follows:

> The *right of contribution* between joint tortfeasors arises at the time of the ... acts. Until one of the joint tortfeasors pays more than his proportionate share of the underlying claim, the right remains *contingent*, subordinate and inchoate. When a tortfeasor pays more than his proportionate share, the right ripen[s] into a cause of action. [citations omitted] [emphasis added].

Id. at 338, quoting *Minneapolis, St. Paul & S.S.M.R. Co. v. City of Fond du Lac*, 297 F.2d 583, 585 (7th Cir.1961).

A co-wrongdoer's action to enforce a right to contribution or indemnity is not destroyed by statutes of limitation preventing the original plaintiff's tort action against an additional defendant. *Cooper v. Philadelphia Dairy Products Co.*, 34 N.J. Super. 301, 112 A.2d 308 (1955). The contribution action accrues and the statute of limitations begins to run when one wrongdoer pays more than his share of a joint obligation that arises out of joint misconduct. *Sziber*, 358 N.W.2d at 339. As Justice Ryan observed, "[t]o hold otherwise would ... permit a plaintiff to choose which ... defendant would bear the entire burden of paying a judgment ..." Id. at 339. This holding, of course, does not prevent a defendant from impleading a joint torfeasor in order to determine, in one lawsuit, the proportional responsibilities of each tortfeasor. *Sziber*, 358 N.W.2d at 341.

A third-party claim for indemnity is, like a claim for contribution, contingent upon *eventual* payment of more than a proportionate share of a joint financial burden. *In re THC Financial Corp.*, 686 F.2d 799 (9th Cir.1982). Although an indemnity claim may be based on an explicit agreement, an action for contribution at law is brought on the theory that an "implied contract" of reimbursement exists between co-wrongdoers. A New York court, in applying the similarity of the two claims, quoted 10 New York Jurisprudence Enforcement of Contribution § 15 as follows:

> Contribution was at one time enforced only in a court of equity ... [I]t is now settled that an action at law will lie on an *implied contract of reimbursement* ... [emphasis added].

*Blum*, 394 N.Y.S.2d at 897.

In the bankruptcy court, any legal obligation of joint tortfeasors must be determined by examining the allegedly tortious conduct. Clearly, when prepetition tortious acts result in obligations between the tortfeasors, the "claim" of a right to contribution is a prepetition claim on an implied contract of reimbursement.

Under state law a statute of limitations may prevent a tort victim from filing a lawsuit against one alleged tortfeasor and yet permit the lawsuit to proceed against other alleged wrongdoers. *Sziber v. Stout*, 358 N.W.2d at 358. In recognition of the

co-wrongdoer's equitable right to seek reimbursement, courts apply a different period to the contribution cause of action. Although the wrongdoer's "right to contribution," that is, his equitable right to payment arises at the date of the joint misconduct, the statute of limitation runs from the date the tortfeasor pays more than his proportionate share of the financial burden. However, the bankruptcy court cannot acknowledge a tortfeasor's right to enforce a claim that emanates from prepetition joint conduct when the enforcement action comes after a chapter 11 discharge.

To recognize a postconfirmation right of recovery on a claim based on prepetition obligations contradicts the basic principle that underlies the discharge provision of the Bankruptcy Code. Not only does the Code promise the good faith debtor freedom from prepetition legal obligations; the Code promises creditors treated in the confirmed plan of reorganization that a realistic possibility of payment exists.

This court holds that since these claims existed as prepetition claims within the meaning of § 101(4) and yet were not filed and allowed with the Bankruptcy Court, they are barred by the statute and order of this court. See *Citibank N.A. v. White Motor Corporation*, (*In re White Motor Credit*), 761 F.2d 270 (6th Cir.1985).

This court declines to follow the reasoning of the Third Circuit Court of Appeals in *Avellino & Biennes v. M. Frenville Co., Inc.* (*In the Matter of Frenville*), 744 F.2d 332 (3rd Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). The *Frenville* court did not distinguish between bankruptcy "claims," state law "accrual" dates, and "causes of action." Neither did it recognize the equitable right to payment contribution. Finally, the *Frenville* reasoning limits the legislative intent that the bankruptcy court deal with even the most remote and contingent claims in the bankruptcy process. See *Roach v. Edge* (*In re Edge*), 60 B.R. 690, 704 (Bankr.M.D.Tenn.1986); *In re Black*, 70 B.R. 645 (Bankr.D.Utah, 1986); *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988), *petition for cert. filed* June 3, 1988 (No. 87–1985).

The first question to resolve in a due process analysis must be whether Respondents have a constitutionally protected property interest. Under Michigan law, an accrued cause of action in tort is a significant interest in property. *Grubaugh v. City of St. Johns*, 384 Mich. 165, 180 N.W.2d 778 (1970). Furthermore, Michigan courts recognize the substantive nature of a cause of action for reimbursement under the theories of contribution and indemnity. *Sziber v. Stout*, 419 Mich. 514, 358 N.W.2d 330 (1984).

The second question is what type of notice is required under the specific facts of the case at bar where the debtor did not know about the potential claims.

Section 521 of Title 11 requires debtors to file a list of "creditors." Clearly, Debtor had an obligation to list unliquidated contingent claims if he knew about them. *Acevedo v. Van Dorn Plastic Machinery*, 68 B.R. 495 (Bankr.E.D.N.Y.1986). In *Acevedo*, the bankruptcy observed that New York manufacturers often seek indemnity and contribution from employers, a fact that obligated the debtor to tell the manufacturer about a prepetition accident that presumably resulted in a tortfeasor-tortfeasor relationship between Debtor and the manufacturer. *Id.* at 499.

In the case at bar, the parties present no facts indicating that Debtor was aware of Respondents' claims. Where a debtor has no knowledge of a claim, it cannot be expected to include the claim in the schedule or to provide notice. *Siouxland Beef Processing Co. v. Knight* (*In re Siouxland Beef Processing Co.*), 55 B.R. 95, 100 (Bankr.N.D.Iowa 1985).

Nevertheless, Respondents clearly had actual notice of the chapter 11 bankruptcy proceedings. Attorneys retained by Respondents to represent their interests and advise them about their rights and responsibilities regarding the employee's death received actual information about Debtor's bankruptcy case. The Supreme Court has

said that knowledge of an agent may be imputed to the principal:

> where the agent is acting within the scope of his authority and the knowledge pertains to matters within the scope of the agent's authority.

*Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956 (1923).

Yet, Respondents claim due process required Debtor to notify them of the very nature of their claims and to provide written notice of the confirmation hearing. This Court finds this argument unpersuasive and not supported by United States Supreme Court decisions.

The United States Supreme Court has spoken clearly on the issue of notice. It is:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated,* under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections ... the notice must be of such nature as *reasonably* to convey the required information. [emphasis added].

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The Supreme Court, in *Mullane,* held that a state law provision permitting notice by publication did not satisfy due process requirements when the interested parties were ascertainable. The Court reaffirmed the underlying principles of *Mullane* in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Adams,* the Court said:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. [citation omitted] When the mortgagee is *identified* in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.

*Mennonite Board of Missions v. Adams,* 462 U.S. at 798, 103 S.Ct. at 2711.

The case at bar does not, on its facts, fit into either the *Mullane* or the *Mennonite Board of Missions* mold. Respondents were not tort or reimbursement claimants either "of record" or otherwise known to Debtor. Nor, does this court find that *Mullane* requires debtors to exercise legal judgment as to theories interested parties may bring if and when the law changes. When a tort claimant is "known" either by filing a complaint or by showing some intent to pursue legal remedies, he is entitled to mailed notice of bankruptcy proceedings. Similarly, a "known" potential reimbursement claimant is entitled to mailed notice. Otherwise, this court finds that publication notice of the filing is reasonable and compatible with due process.

A bankruptcy case has a material impact on how an attorney proceeds in representing his client. Respondents' failure to file claims in the bankruptcy case before August 1986 cannot be attributed solely to ignorance of the bankruptcy case. Nor can it be attributed to ignorance of the underlying facts of Plaintiff # 1's tort claim. Furthermore, it cannot be attributed to an inability of Plaintiff to pursue intentional tort claims against a Michigan employer. The Beauchamps filed their law suit in 1982 and the case was on the Michigan Supreme Court docket during Debtor's bankruptcy case. Rather, the inaction of Respondents must be attributed in good measure to willfulness. Creditors who do not recognize the potentiality for a recovery on these claims in the debtor's bankruptcy or who choose not to litigate the ultimate merits of their claims before confirmation cannot be heard to complain when the court recognizes the bankruptcy discharge provision as a complete bar and defense to postconfirmation actions against a reorganized debtor.

Accordingly, this Court does find that the Order of Confirmation operates to discharge of Debtor of legal obligations arising out of tortious conduct, if any, as complained of by Respondent to this motion. Further, this Court directs Respondents to

dismiss Debtor from the Wayne County litigation.

IT IS SO ORDERED.