### In re WATERMAN STEAMSHIP CORPORATION, Debtor.

### WATERMAN STEAMSHIP CORPORATION, Plaintiff,

v.

### Jose AGUIAR, et al., Defendants.

Bankruptcy No. 83–11732.
Adv. No. 87–5042A.

United States Bankruptcy Court, S.D. New York.

June 10, 1992.

---

L.C. Jaques, A. Kellman, Jaques Admiralty Law Firm, Detroit, Mich., for defendants (Asbestosis claimants).

A.L. Gropper, J.P. Laughlin, L.M. Fleischman, of counsel, White & Case, New York City, for plaintiff Waterman S.S. Corp. (Waterman).

## MEMORANDUM OF DECISION ON 11 U.S.C. 1141(d)(1)(A) and F.R.Bkrtcy.P. 4007

### FRANCIS G. CONRAD, Bankruptcy Judge.*

The issue before us [1] is whether former employees who were exposed to asbestos pre-petition have dischargeable claims. If "claim," as defined in § 101(5) of Title 11, includes assertions by those who have been exposed to asbestos, but have not yet manifested a diagnosable disease, there is jurisdiction to deal with these claims. If not, the claims exist outside the bankruptcy case and are not directly affected by the reorganization.

Former Waterman employees ("Asbestosis Claimants") allege they manifested asbestos-related diseases post-petition, and seek a determination that their claims were not discharged by the Order confirming Waterman's plan of reorganization. These seamen were essentially independent contractors for whom Waterman has no records, and who did not belong to any union that had agreements with Waterman. Waterman, on the other hand, maintains these are pre-petition claims discharged by the Confirmation Order. None of these employees participated in the reorganization, nor did these employees have any representation in the bankruptcy proceedings. Waterman knew these Claimants were exposed to asbestos, yet failed to list them as contingent creditors on its schedules. We hold that these claims are pre-petition claims within our jurisdiction. We further hold that Waterman's failure to notify these known creditors violated their Fifth Amendment rights to due process,

and thus, these asbestosis related claims were not discharged upon confirmation of the plan of reorganization.

## PROCEDURAL HISTORY

Waterman filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 1983. This Court issued a Bar Order on May 4, 1984, under Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, requiring all entities with a claim against Waterman to file a proof of claim by July 20, 1984, or be barred from pressing that claim against Waterman. The Bar Order required Waterman to notify individually all entities known to have an admitted or potential claim against the Debtor, and to give notice to all others by publication of the bar date on or before June 1, 1984.

Accordingly, notice of the bar date was published in the *New York Times, The Mobile Press–Register, The New Orleans Times Picayune* and *The Journal of Commerce.* The *New York Times* and *The Mobile Press Register* are publications of national scope and distribution. The others were published in ports where Waterman's operations were concentrated.

Waterman's Second Amended Joint Plan of Reorganization was confirmed on June 19, 1986. The Confirmation Order expressly discharged all then-existing claims, regardless of when they arose, and enjoined any person holding such a claim from seeking to enforce it. A Final Decree was signed on January 9, 1991.

Throughout 1986 and after, Asbestosis Claimants named Waterman as a defendant in suits filed in the U.S. District Court in the Northern District of Ohio. Asbestosis Claimants allege they sustained injuries as a direct and proximate consequence of 1) exposure to asbestos, 2) the negligence of Waterman, 3) Waterman's breach of its

---

* Sitting by Special Designation.

1. Our subject matter jurisdiction over this matter arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is

a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052. *See* the body of this decision for more definitive statements about our jurisdiction.

warranty to provide the Asbestosis Claimants with sea-worthy vessels, and 4) Waterman's willful violation of the duty to maintain safe and sea-worthy vessels. Waterman has not answered any of the Complaints.

Instead, Waterman commenced this adversary proceeding in 1987, seeking a declaratory judgment permanently enjoining the commencement or continuation of any legal proceeding based on, or arising out of, claims that arose prior to the June 19, 1986 Confirmation Order. The Asbestosis Claimants filed responsive papers and a counter-complaint seeking a declaratory judgment holding that the claims of the Asbestosis Claimants were not discharged by the Confirmation Order. Asbestosis Claimants moved for summary judgment under F.R.Civ.P. 56.

### ARGUMENT OF THE PARTIES

Asbestosis Claimants make two arguments in support of their non-dischargeability claim. First, Asbestosis Claimants assert that their claims "arise" on the date of manifestation. Asbestosis Claimants argue for a narrow reading of "claim," and insist that if no injury is diagnosable during the bankruptcy, no cause of action for negligence is maintainable. With no claim until injury is detectable, Asbestosis Claimants argue that their claims exist outside the bankruptcy proceeding and are not directly affected by the reorganization. Alternatively, Claimants argue that even if their claims arose pre-petition, they did not receive constitutionally sufficient notice of the Bar Order or the Confirmation Order.

Waterman, on the other hand, maintains these pre-petition claims were discharged by the terms of the Confirmation Order and under § 1141(d)(1)(A). Waterman's straightforward argument relies upon the broad statutory definition of "claim," and the discharge and injunction provisions contained in the Confirmation Order.

Under F.R.Civ.P. 56(c), incorporated into bankruptcy procedure by F.R.Bkrtcy.P. 7056, summary judgment may be granted "if the pleadings, ... admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a judgment as a matter of law." *Id.* We agree with Waterman that the claims arose pre-petition. We hold, however, that discharging these claims unnecessarily strains, if not vitiates, the notice requirements embodied in the due process clause of the Fifth Amendment, and, for reasons set out below, find that these claims were not discharged.

### DISCUSSION

■ 11 U.S.C. § 101(5) broadly defines "claim" to mean:

**(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured.

Moreover, Congress intended the definition of a claim to be:

the broadest possible definition ... [contemplating that] all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 595, 95th Cong.2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6266; *see also,* S.Rep.No. 989, 95th Cong., 2d Sess. 21–22, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5807–08; *Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991).

Cases interpreting § 101(5) almost without exception state that the term claim must be expansively defined. In *In re Robinson,* 776 F.2d 30 (2d Cir.1985), *rev'd on other grounds,* 479 U.S. 36, 107 S.Ct.

353, 93 L.Ed.2d 216 (1986), the Second Circuit Court of Appeals, citing a compendium of case law, characterized the scope of the term claim as being:

> "broad," *Ohio v. Kovacs,* [469 US 274, 279], [83 L.Ed.2d 649], 105 S.Ct. 705, 708 (1985); "very broad," *In re M. Frenville Co.,* 744 F.2d 332, 336 (3d Cir.1984); *cert. denied,* [469 US 1160], [83 L.Ed.2d 925], 105 S.Ct. 911, (1985); "extremely broad," *In re Kennise Diversified Corp.,* 34 B.R. 237, 244 n. 6 (Bkrtcy.S.D.N.Y.1983); "could not be broader," *In re Thomas,* 12 B.R. 432, 433 (Bkrtcy.S.D.Iowa 1981); "broadest possible," *Kallen v. Litas,* 47 B.R. 977, 982 (N.D.Ill.1985); *In re Vasu Fabrics, Inc.,* 39 B.R. 513, 517 (Bkrtcy. S.D.N.Y.1984); *In re Johns–Manville Corp.,* 36 B.R. 743, 754 n. 6 (Bkrtcy. S.D.N.Y.1984); "all encompassing," *In re Baldwin–United Corp.,* 48 B.R. 901, 903 (Bkrtcy.S.D.Ohio 1985); *In re Barnett,* 42 B.R. 254, 257 (Bkrtcy.S.D.N.Y. 1984); and "sufficiently broad to cover any possible obligation," *In re Smith Jones, Inc.,* 26 B.R. 289, 293 (Bkrtcy. D.Minn.1982).

The Second Circuit added that this wide reaching definition was "intended so that virtually all obligations to pay money would be amenable to treatment in bankruptcy proceedings." *Id.* at 34.

In *In re Johns–Manville Corp.,* 36 B.R. 743 (Bkrtcy.S.D.N.Y.1984), Manville filed for Chapter 11 protection precisely because the impact of future litigation based upon asbestos exposure would make the solvent corporation insolvent. As the Court stated, "Any plan emerging from this case which ignores [future asbestos claimants] would serve the interests of neither the debtor nor any of its other creditor constituencies in that the ... long-term economic drain on the debtor would not have been eliminated. Manville might indeed be forced to file again and again...." *Id.* at 746. It is abundantly clear that the *Manville* Court

was concerned that if the asbestos claimants did not participate in the reorganization, the claims would not be discharged.[2]

Moreover, in *In re Johns–Manville Corp.* 57 B.R. 680, 689 (Bkrtcy.S.D.N.Y. 1986), the Court declined to follow *In re Frenville Co.,* 744 F.2d 332 (3d Cir.1984) *cert denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in which the Third Circuit Court of Appeals mistakenly applied state law rather than federal bankruptcy law to determine when creditors' claims arose. *See also, Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). The *Manville* Court reasoned that in determining whether or not a claim exists, "the proper focus should be on the time when the acts giving rise to the alleged liability were performed...." *Manville, supra,* 57 B.R. at 690. The Court continued, "(f)or federal bankruptcy purposes, a pre-petition 'claim' may well encompass a cause of action that, under state law, was not cognizable until after the bankruptcy petition was filed." *Id.*

■ We agree with the *Manville* Court and hold that a claim arises at the moment when acts giving rise to the alleged liability are performed. In the matter *sub judice,* the claims arose at the moment the Asbestosis Claimants came into contact with the asbestos. Thus, we hold that the claims at issue are pre-petition claims. Our determination is based on the Code's definition of "claim," the legislative history surrounding 11 U.S.C. § 101(5), and the cornerstone theory of bankruptcy, the "Fresh Start."

■ Indisputably, those who hold claims are creditors. 11 U.S.C. § 101(10) defines "creditor" to mean an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." As stated above, Asbestosis Claimants hold claims that arose

**2.** Asbestosis Claimants are not necessarily aided if we agree with them that they do not have "claims" until manifestation. If debtors elect to liquidate there may be no recovery to future tort claimants because they do not have "claims" entitled to *pro rata* distribution. As the

Second Circuit noted in *In re Chateaugay Corp.,* 944 F.2d 997 (2nd Cir.1991), a determination that unmanifested tort claims are not now claims might impair the prospects of achieving a viable reorganization with the result that the debtor may liquidate under Chapter 7.

pre-petition and are, therefore, creditors within the meaning of the Code.

█ Generally, the Code provides that a creditor of a Chapter 11 debtor loses its pre-petition claims after the debtor's bankruptcy reorganization plan is confirmed, even if it was not notified of the bankruptcy. 11 U.S.C. § 1141; *see also, In re Brooks Fashion Stores, Inc.*, 124 B.R. 436 (Bkrtcy.S.D.N.Y.1991). The due process considerations of the Fifth Amendment, however, are given great weight and take precedence over the discharge provisions of § 1141,[3] in cases where a debtor has knowledge of claims against it, and fails to inform claimants of the pendency of the proceedings. *See, Broomall Industries, Inc. v. Data Design Logic Systems*, 786 F.2d 401, 403 (Fed.Cir.1986); *Brooks, supra*, 124 B.R. at 445; *In re General Oil Distributors, Inc.*, 68 B.R. 603 (Bkrtcy.E.D.N.Y. 1986). This is not to say § 1141 is unconstitutional *per se*, but that its application in certain circumstances could be unconstitutional. When a creditor was known to the debtor, or should have been known under the circumstances, Courts will examine closely whether a creditor's Fifth Amendment rights were violated. *Broomall, supra*, 786 F.2d at 403.

Even where a creditor is aware of the pendency of the bankruptcy case, Courts have held that the debtor is obligated to give formal actual notice to the creditor where the creditor is known to the debtor. *New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *see also, In re Spring Valley Farms, Inc.*, 863 F.2d 832 (11th Cir.1989); *In re Moskowitz*, 35 B.R. 750 (S.D.N.Y. 1983).

In light of the highly publicized *Johns–Manville* bankruptcy, which sought bankruptcy protection precisely because the rav-ages of asbestos dust threatened the continued viability of an otherwise robust Manville in the form of unmanifested asbestos-related claims, it is our belief that ample evidence existed for Waterman to conclude that an amorphous class of unmanifested asbestosis claimants, namely the Claimants before us, existed at the time Waterman filed its bankruptcy petition. Yet, Waterman neglected or declined to include this class of creditors on its schedules.

Particularly where no other creditor in this bankruptcy had interests sufficiently aligned with those of the future Asbestosis Claimants to invite them to participate in the reorganization, do we feel compelled to examine whether the Fifth Amendment due process requirements were met. Indeed, all creditors in the Waterman bankruptcy and, to some extent the debtor itself, had interests antithetical to the future Asbestosis Claimants. Unsecured creditors had little incentive to invite another class of claimants to share in its *pro rata* recovery. Moreover, although Waterman should have been motivated to represent the Asbestosis Claimants in its reorganization so that Waterman's financial obligation as to this class would be discharged, this tainted and somewhat less than robust advocacy would have been unacceptable. *See also, Manville*, 36 B.R. at 749, n. 3.

Waterman had owned and operated sea vessels since 1919. Through the 1950's, Waterman owned and operated more than 50 vessels in regular service. During that period, Waterman was the largest privately owned shipping company in the world. Affidavit of Parker, dated Oct. 18, 1990, p. 6. During the period 1935–1980, Waterman employed "on a conservative basis", tens of thousands of sea-going personnel. *Id.* at 7. Additionally, Waterman contends that no

---

**3.** 11 U.S.C. § 1141(d)(1)(A) provides:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan.

vessel owned or operated by Waterman since the early 1970's has contained any asbestos or asbestos product. *Id.* at 5. Taken as true, Waterman had asbestos on its vessels for approximately 50 years.

Over 100 claims asserting asbestos-related diseases were filed against Waterman during its reorganization. The majority of the claims were filed by marine engineers who were members of the Marine Engineers Beneficial Association ("MEBA Claimants"). The MEBA Claimants were, for the most part, plaintiffs in litigation pending against Waterman (and other shipowners and operators) in New Orleans, Louisiana prior to the bankruptcy filing date. Just two days prior to confirmation, the asbestos litigation between these parties settled. *See*, Order Approving Asbestos Settlements, dated June 17, 1986, Buschman, USBJ. Of the "tens of thousands" of Waterman employees, Waterman knew other employees were exposed to asbestos, yet never listed them on its schedules, or amended its schedules to include this contingent class of claimants. We find that Waterman knew other non-settling former employees had contingent claims in the form of unmanifested asbestos-related diseases prior to confirmation. Thus, Asbestosis Claimants were known creditors entitled to actual notice.

■ If Waterman wants the benefits of the discharge provisions contained in § 1141, it must also incur the burdens of providing adequate notice. The proper focus of our inquiry is on the reasonableness of Waterman's actions in complying with the due process requirements mandated by the United States Constitution. In its decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 871 (1950), the Supreme Court declared, "(a)n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The Court went on to say, "... when notice is a person's due, process which is a mere gesture is not due process." *Id.* We find that Waterman was unreasonable in its attempt to notify future Asbestos Claimants of the existence of their claims, and find that the claims were not discharged.

Notice to these Asbestosis Claimants is not cured by this Court's Order authorizing notice by publication; at its best, publication notice is an emaciated form of minimal due process. First, the notice was not reasonably calculated to apprise these claimants of the pendency of this bankruptcy. Second, no future Asbestosis Claimant could be deemed to have relinquished substantive rights when, even if that individual had read the "notice," those individuals would have remained completely unaware that their substantive rights were affected.

Turning to the first, we recognize the difficulties Waterman faced. It could not personally serve these workers with notice of the pending bankruptcy or the Bar Order, because Waterman could neither identify nor locate the future claimants. The burden would simply have been too onerous. Waterman, nevertheless, should not have abrogated its duty to give notice to known, yet admittedly unidentifiable, creditors relying upon the discharge provisions contained in the Confirmation Order, when Waterman could have meaningfully involved these creditors in the reorganization process. To ignore the Asbestosis Claimants was to also write out of the Code its estimation provisions. We will not tolerate efforts to sandbag a class of known creditors through publication notice when Waterman simply could have appointed a representative to receive notice for, and represent the interests of, known but unidentifiable future claimants.

In *In re Amatex Corporation*, 30 B.R. 309 (Bkrtcy.E.D.Pa.1983), *remanded*, 37 B.R. 613 (E.D.Pa.1983), *rev'd*, 755 F.2d 1034 (3rd Cir.1985), debtor sought appointment of a *guardian ad litem* to represent the interests of future unknown claimants. The request was denied on testimony that in the field of asbestos litigation, no cause of action arises until symptoms of disease have been presented. Equating claim with

cause of action and finding that the discharge provision applies to debts that arose prior to confirmation, the Court concluded that future asbestos claimants do not hold claims as defined in the Code, and that future claims would not be discharged in the proceeding. On appeal, the Third Circuit Court of Appeals reversed, and held that the interests of future asbestos victims were entitled to a voice in reorganization, and yet also concluded that it was unnecessary, at that time, to determine if future claimants have claims cognizable under the Code.

In *In re UNR Industries*, 29 B.R. 741 (N.D.Ill.1983), *app. dismd., mand. den.*, 725 F.2d 1111 (7th Cir.1984), *motion gr in part, den in part*, 46 B.R. 671 (Bkrtcy. N.D.Ill.1985), the District Court denied an application to appoint a legal representative for the interests of an unknown number of individuals exposed to asbestos, who may in the future manifest an asbestos related disease and claim against the debtor. The Court determined that a claim of this sort arises under state law, and that the existence of a claim turns on when it arose, which, in the case of a tort, occurs when plaintiff knows or should have known of the injury. UNR appealed to the Seventh Circuit Court of Appeals, which concluded that the ruling was premature for appeal, yet indicated its disagreement with the District Court's reasoning regarding the status of future claimants in the bankruptcy proceedings. UNR moved for reconsideration. The Bankruptcy Court held that a legal representative should be appointed. The Bankruptcy Court, however, withheld decision on whether future asbestosis claimants had claims within the meaning of the Code. It is beyond preadventure that both *Amatex* and *UNR* were advancing toward what we perceive is the correct understanding of claim as enunciated in *Robinson, supra*, 776 F.2d at 30.

Second, no future Asbestosis Claimant who, by definition, had yet to manifest any detectible injury prior to confirmation, could be deemed to have relinquished substantive rights when, even if that individual had read the "notice," those individuals would have remained completely unaware

that their substantive rights were affected. In *Acevedo v. Van Dorn Plastic Machinery Co.*, 68 B.R. 495, 499 (Bkrtcy.E.D.N.Y. 1986), the Court did not discharge a prepetition claim and, in so doing, cited and relied upon *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984). The *Acevedo* Court refused to discharge a claim because no notice of the reorganization process had been given to the claimant and reasoned, "... due process should also require that a debtor notify a creditor of his claim when the creditor is unlikely to know about the claim otherwise. A creditor who is notified of the bankruptcy, but not of his claim, is in the same position as a creditor who has notice of his claim, but not of the bankruptcy." *Id.* at 499.

Thus, even if the Asbestosis Claimants had read the bar date notice published in their local paper, the notice failed to notify Asbestosis Claimants of the nature of their claims. Thus, 1141(d)(1)(A) unfairly eliminated Asbestosis Claimants' claims, and, consequently, we hold Asbestosis Claimants' claims are non-dischargeable.

Based on the foregoing, we find there are no genuine issues of material fact precluding our grant of summary judgment. Accordingly, Asbestosis Claimants' motion for summary judgment to determine the non-dischargeability of their claims will be granted.

Counsel for Asbestosis Claimants is to settle an order.