20-3693-bk

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of September, two thousand twenty-two.

PRESENT:  JON O. NEWMAN,
          JOSÉ A. CABRANES,
          RICHARD C. WESLEY,
                    *Circuit Judges.*

---

IN RE JOHNS-MANVILLE CORPORATION,

    *Debtor*,

WILLIAM WAYNE BERRY, personal
representative of the Estate of Lynda Berry,

    *Appellant*,

    v.                                                    No. 20-3693-bk

GRAPHIC PACKAGING INTERNATIONAL,

    *Appellee.*

---

**FOR APPELLANT:**                       NATALIE D. RAMSEY (Thomas J. Donlon,
                                         Davis L. Wright, *on the brief*), Robinson &
                                         Cole LLP, Philadelphia, PA.

1

**FOR APPELLEE:**                                  JAMES I. MCCLAMMY, Davis Polk &
                                                    Wardwell LLP, New York, NY (Miles C.
                                                    Babin, Deborah S. Mazer, Davis Polk &
                                                    Wardwell LLP; J. Eric Lockridge, Kean
                                                    Miller LLP, *on the brief*).

Appeal from an order and judgment, entered September 30, 2020, by the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*), affirming the June 30, 2016 order of the United States Bankruptcy Court for the Southern District of New York (Cecelia G. Morris, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 30, 2020 order and judgment of the District Court, affirming the June 30, 2016 order of Bankruptcy Court, be and hereby are **AFFIRMED**.

**I.**

Appellant William Wayne Berry ("Mr. Berry"), personal representative of the Estate of Lynda Berry ("Mrs. Berry"), appeals the District Court's order and judgment affirming the Bankruptcy Court's earlier order enjoining Mrs. Berry from pursuing claims against Appellee Graphic Packaging International ("Graphic") in Louisiana state court.[1] Between 1973 and 2010, Mr. Berry worked at a mill now owned by Graphic. Mrs. Berry, who was diagnosed with mesothelioma in 2015, alleged that her disease was caused by contact with asbestos fibers that were carried home from the mill on her husband's work clothes. In 2015, Mrs. Berry commenced an asbestos-related personal injury suit in Louisiana state court against several defendants, including Graphic (the "Louisiana Action").

Shortly before the Louisiana Action was set to go to trial, in February 2016, Graphic commenced this present suit seeking to enjoin Mrs. Berry from pursuing claims against Graphic in the Louisiana Action. Graphic pointed to two orders entered by the Bankruptcy Court on March 26, 1984, and December 22, 1986, confirming, respectively, the reorganization plans of Manville Forest Products Corporation ("MFP") and its parent, Manville Corporation ("Manville").[2] In particular, the March 26, 1984 order confirming the MFP Plan of Reorganization ("MFP Plan") stated that MFP "is discharged and released from any and all unsecured debts which arose before the date of confirmation" of the MFP Plan and that "[a]ll creditors . . . or other entities whose debts

---

[1]     In April 2021, while this appeal was pending, Mrs. Berry died. On November 18, 2021, we granted Mr. Berry's motion pursuant to Federal Rule of Appellate Procedure 43(a)(1) to substitute himself as personal representative on Mrs. Berry's behalf.

[2]     Graphic is the corporate successor to MFP.

are discharged or whose rights and interests are terminated by the [MFP] Plan . . . are . . . permanently restrained from instituting or continuing any action or employing any process to collect such debts or pursue such interests" against MFP or its successors. J.A. 312–13. Moreover, the confirmed Manville Plan of Reorganization ("Manville Plan") contained a channeling injunction, enjoining future claimants from bringing proceedings to recover against Manville or its subsidiaries and instead requiring that future claimants pursue their claims through the Manville Personal Injury Trust (the "Trust"), which was "designed to satisfy the claims of all asbestos health victims, both present and future." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 640 (2d Cir. 1988); *see* J.A. 350–51.

On June 30, 2016, the Bankruptcy Court issued an order enjoining Mrs. Berry's claims against Graphic in the Louisiana Action. *See In re Johns-Manville Corp.*, 552 B.R. 221 (Bankr. S.D.N.Y. 2016) ("*Johns-Manville I*"). Mrs. Berry appealed to the District Court, and on September 30, 2020, the District Court affirmed the Bankruptcy Court's injunction. *See In re Johns-Manville Corp.*, 623 B.R. 242 (S.D.N.Y. 2020) ("*Johns-Manville II*"). Mr. Berry now appeals before us. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## II.

Our review of a district court's order in its capacity as an appellate court is plenary. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). We therefore review the bankruptcy court's factual conclusions for clear error, reversing "only if we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). We review the district court's legal determinations *de novo*. *Id.*

## III.

As a preliminary matter, we first consider — as we must — whether Mr. Berry has standing under Article III of the Constitution to bring this appeal. *See In re Clinton Nurseries, Inc.*, 998 F.3d 56, 63 (2d Cir. 2021). "[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved — a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011) (internal quotation marks omitted). We conclude here that Mr. Berry does have standing.

In arguing otherwise, Graphic points to a $2.25 million judgment in Mrs. Berry's favor entered by a Louisiana court against Foster Wheeler LLC ("Foster Wheeler"), a contractor at the mill where Mr. Berry used to work. Graphic suggests that Mrs. Berry was "fully compensated for her injury" and that she is therefore no longer aggrieved by the Bankruptcy Court's injunction. Appellee Br. 57. We disagree. Put simply, the $2.25 million judgment against Foster Wheeler did not fully compensate Mrs. Berry for the injuries she alleges against Graphic. For one, the Louisiana trial court awarded her $4.5 million in damages, but only rendered final judgment in favor of Mrs.

3

Berry and against Foster Wheeler in the amount of $2.25 million.[3]  Thus, even assuming that $4.5 million represented the quantum of damages sufficient to fully compensate for Mrs. Berry's injuries (including those injuries as alleged against Graphic), the record before us does not show that Mrs. Berry was paid the full $4.5 million.  Moreover, the injunction at issue on this appeal enjoined Mrs. Berry from pursuing her asbestos-related claims *against Graphic*, a claim which was not adjudicated in the Louisiana Action.  In sum, Mrs. Berry (and now Mr. Berry, as her personal representative) is "a person directly and adversely affected pecuniarily" by the challenged Bankruptcy Court injunction preventing her from pursuing relief against Graphic in the Louisiana Action.  *See In re DBSD N. Am., Inc.*, 634 F.3d at 89 (internal quotation marks omitted).

## IV.

Next, we turn to the issue of whether the claims at issue here were discharged in the MFP and Manville bankruptcies.

Mr. Berry argues that the claims filed in the Louisiana Action did not arise prior to the confirmation of the MFP Plan and that the relevant claims should not be subject to the discharge and channeling provisions of the MFP and Manville Plans.  As we have said before, "the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose *before* the filing of the petition." *In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir. 1995) (emphasis added).  "A claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation — a right to payment — under the relevant non-bankruptcy law." *In re Manville Forest Prods. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) (internal quotation marks omitted).  Moreover, "[i]f the right to payment is contingent on future events, the claim must instead result from pre-petition conduct fairly giving rise to that contingent claim," and "there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable." *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 156 (2d Cir. 2016) (internal quotation marks omitted).

Here, we conclude — as did both the Bankruptcy Court, *Johns-Manville I*, 552 B.R. at 237–39, and the District Court, *Johns-Manville II*, 623 B.R. at 250–51 — that the claims against Graphic arose pre-petition and that they were therefore properly enjoined.  While Mrs. Berry's mesothelioma was not diagnosed until 2015, the relevant date is not that of her diagnosis but rather that of her asbestos exposure.  *See, e.g., In re Quigley Co., Inc.*, 383 B.R. 19, 27 (Bankr. S.D.N.Y. 2008) ("[A]n Asbestos [Personal Injury] Claimant's pre-petition exposure to asbestos gave rise to a 'claim,' regardless of whether the law of any particular state renders the cause of action unenforceable until some future

---

[3]  The Louisiana court reduced the amount of the final judgment to reflect a "one-half virile share" of Olin Corp, the former owner of the mill and another defendant in the Louisiana Action. *See Berry v. Anco Insulations*, 273 So. 3d 595, 601 (La. Ct. App. 2019).

contingency occurs. If the Asbestos [Personal Injury] Claimant was exposed to asbestos before the . . . petition date, he or she holds a 'claim.'"); *In re Waterman S.S. Corp.*, 141 B.R. 552, 556 (Bankr. S.D.N.Y. 1992) ("[T]he claims arose at the moment the Asbestosis Claimants came into contact with the asbestos."), *vacated on other grounds*, 157 B.R. 220 (S.D.N.Y. 1993); *see also In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc) ("[T]here seems to be something approaching a consensus among the courts that a prerequisite for recognizing a 'claim' is that the claimant's exposure to a product giving rise to the 'claim' occurred pre-petition, even though the injury manifested after the reorganization. We agree and hold that a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under [11 U.S.C. § 101(5)]."). We thus agree with the District Court that, "[g]iven the toxic nature of asbestos, the [tort] elements of both duty and breach occur at the time of first exposure, which in this case is indisputably pre-petition." *Johns-Manville II*, 623 B.R. at 250.

In arguing otherwise, Mr. Berry principally relies on Mrs. Berry's alleged continued indirect exposure to asbestos following the bankruptcies and through 2010. In particular, he points to the fact that the claims against Graphic in the Louisiana Action were pleaded on a theory of "premises liability," *i.e.*, the failure of Graphic to provide Mr. Berry "a safe place in which to work free from the hazards of asbestos," and that such a claim "arose . . . after confirmation of the MFP Plan." Appellant Br. 14; J.A. 101; *see also* J.A. at 102. Like the Bankruptcy Court and the District Court, we are not convinced that by labeling the claim as one of "premises liability," the claim is converted from one that is pre-petition into one that is post-petition. It is undisputed that Mrs. Berry's exposure to asbestos began pre-petition. This exposure constituted the "contact or relationship between [Graphic's predecessor] and [Mrs. Berry] such that the claimant is identifiable." *In Matter of Motors Liquidation Co.*, 829 F.3d at 156.

## V.

Finally, Mr. Berry argues that Mrs. Berry was denied procedural due process in that she was not given adequate notice in the MFP bankruptcy proceedings.[4] In bankruptcy proceedings, "a claim cannot be discharged if the claimant is denied due process because of lack of adequate notice." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014). "[W]hether notice comports with due process requirements turns on the reasonableness of the notice, a flexible standard that often turns on what the debtor or the claimant knew about the claim or, with reasonable diligence, should have known." *Id.* (citations omitted); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due

---

[4] Mr. Berry does not challenge the adequacy of the procedural due process Mrs. Berry received in the Manville bankruptcy proceedings. *See* Appellant Br. 37 ("[T]he Manville bankruptcy was an example of the type of notice — utilizing a [Future Claims Representative] — that should have been provided to [Mrs. Berry] [in the MFP bankruptcy].")

process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Mr. Berry argues that because the MFP bankruptcy lacked a Future Claims Representative ("FCR"), Mrs. Berry was denied due process. But he is unable to cite any binding decision in which a court has held that a FCR is *necessary* to comport with constitutional due process. Moreover, as the District Court and Bankruptcy Court both note, Mrs. Berry was indeed represented by a FCR in the Manville bankruptcy proceedings, as a result of which any claim she had against Graphic (as successor to Manville's subsidiary) was channeled to the Trust.[5] We thus conclude that Mrs. Berry received constitutionally adequate due process in the course of the MFP and Manville bankruptcies.

## VI.

We have considered Mr. Berry's remaining arguments and find them to be without merit. For the foregoing reasons, therefore, we AFFIRM the September 30, 2020 order and judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Mr. Berry makes much of the fact that chronologically, the MFP Plan — which was confirmed by the Bankruptcy Court on March 26, 1984 — was entered *before* the FCR in the Manville bankruptcy was appointed on August 14, 1984. He argues that if the MFP Plan extinguished Mrs. Berry's claim on March 26, 1984, "there would be no claims against MFP left on which the Manville FCR could represent [her]." Appellant Br. 36. The upshot, he argues, is that Mrs. Berry was not the beneficiary of any procedural due process afforded by the FCR and that the Manville FCR is therefore irrelevant for purposes of the present due process analysis.

Mr. Berry's argument suffers from a logical flaw. If Mr. Berry is indeed correct that the MFP bankruptcy deprived Mrs. Berry of constitutionally sufficient due process protections, then any claim she had against MFP could *not* have been discharged. *See DPWN Holdings*, 747 F.3d at 150. Thus, under Mr. Berry's own reasoning, Mrs. Berry did indeed have a non-discharged claim against MFP at the time that the FCR was appointed in the Manville bankruptcy to protect the interests of future claimants.

6